**UNITED STATES of America,**
**Appellee,**

v.

**Solon GLAZE, also known as Solo,**
**Appellant.**

**No. 259, Docket 27928.**

United States Court of Appeals
Second Circuit.

Argued Jan. 24, 1963.

Decided Feb. 1, 1963.

Gordon I. Novod, New York City, for appellant.

Howard L. Jacobs, Asst. U. S. Atty. Southern District of New York (Robert M. Morgenthau, U. S. Atty., and Arnold N. Enker, Asst. U. S. Atty., on the brief), for appellee.

Before FRIENDLY, KAUFMAN and MARSHALL, Circuit Judges.

KAUFMAN, Circuit Judge.

The defendant appeals from a judgment of conviction entered by Judge Bonsal, sitting without a jury, on two counts of a three count indictment charging violations of the federal narcotics laws, 21 U.S.C. §§ 173, 174. Each count of the indictment charged, in the usual form, that the defendant "unlawfully, wilfully and knowingly did receive, conceal, sell and facilitate the transportation, concealment and sale of a narcotic drug * * *," stipulating three specific dates in September and October of 1961. After pleading not guilty to the indictment, the defendant moved for a bill of particulars, and requested that the Government disclose

"1. The date, hour and place, by street and number, of each of the violations alleged in each count of the indictment.

"2. If it is claimed that there was an actual sale, then set forth as to each count the claim of actual sale, the names of the persons to whom it will be claimed the defendant SOLON GLAZE sold or transferred the narcotics alleged to have been sold; a statement as to wheth-

er or not the said persons were in the employ of the Government or acting in the instance of the Government."

At the hearing of the motion before Judge Levet, the Assistant United States Attorney expressed unwillingness to comply with one of the defendant's requests for particulars.

"As to No. 2 your Honor, the Government I don't believe has to at this time choose what they alleged in the indictment. The Government has alleged in the alternative several acts on the defendant's part and I don't think the Government has to disclose to the defendant at this time in the bill of particulars whether they are alleging a sale.

\* \* \* \* \* \*

"The Government does not say at this time whether there has been a sale—the request is that if the Government does say there is a sale we should name the people. If we have to name people, we would be telling them whether there was a sale or not * * *."

To cure this purported defect in the request for the bill of particulars, Judge Levet ordered that the Government furnish not only the date, hour and place of the charged offenses, but also "the names of the persons who will be claimed by the United States of America acted with or in connection with the defendant, Solon Glaze in connection with" the violations charged, and whether or not the persons named were acting at the instance of the Government. In its bill, the Government named only one person, "Cleophus A. Robinson, II, an employee of the United States Government," in connection with each of the offenses.

At the trial, Robinson, an agent of the Federal Bureau of Narcotics, was called as the Government's first witness, and almost immediately upon taking the stand, testified to a sale of narcotics which took place at the defendant's apartment. The sale from the defendant to Robinson was accomplished through the

liaison and in the presence of a special employee of the narcotics bureau, one Saul Sapp or Saul Scott. Objecting to the introduction of this testimony as inconsistent with the particulars furnished by the Government, the defendant's attorney moved to strike it from the record. He claimed that by divulging only Robinson's name, and by withholding Scott's, the Government placed an improper restriction upon defendant's preparation for trial, and that by well-settled principles, the Government's proof should be restricted to the facts as furnished in its bill of particulars.

The trial judge at first reserved decision and subsequently denied the motion, concluding that the Government's bill provided the defendant with adequate information "because it does name the principal agent involved, the alleged dates and times of the sales, or the transactions, and the place of the transactions." Robinson then testified to other transactions to which the special employee was a party. At the end of the entire case, the third count of the indictment was dismissed, and the defendant was convicted on the first two counts. On appeal, he asserts that the trial judge committed error in denying his motion to strike Robinson's testimony as inconsistent with the bill of particulars.

■ We find that the deviation between the Government's bill and its proof at trial was not of substantial prejudice to the defendant. We therefore affirm the judgment of conviction

■ It is no doubt true that "[t]he function of a bill of particulars is to enable the accused to prepare for trial and to prevent surprise, and to this end the government is strictly limited to proving what it has set forth in it." United States v. Murray, 297 F.2d 812, 819 (2d Cir.), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962). See United States v. Neff, 212 F.2d 297, 309 (3d Cir., 1954). Courts must therefore view with suspicion attempts by parties to adduce proof of facts which modify or contradict assertions recorded in their bill of particulars. Judge Levet's order was purposely drawn in broad language —"the names of the persons who * * * acted * * * in connection with the defendant * * * in connection with the violations" charged—language which without question swept within its ambit not only agent Robinson but also special employee Scott. Nonetheless, the trial judge concluded that the Government had complied with Judge Levet's order by naming the "principal agent" involved. We think this reading of the order too parsimonious. Since the Government was not willing to disclose that the precise charge against the defendant was a sale of narcotics and the order was purposely drawn so as to encompass persons other than a particular vendee, the trial judge's reading of the language in the order to mean only "principal agent" completely negated the significance of the broadly worded order.

■ Our inquiry does not end here, however. For it is well settled that a variance between the proof and the bill of particulars is not grounds for reversal unless the appellant is prejudiced by the variance. See United States v. Burgos, 269 F.2d 763, 767–768 (2d Cir., 1959), cert. denied, 362 U.S. 942, 80 S.Ct. 808, 4 L.Ed.2d 771 (1960); United States v. Albanese, 224 F.2d 879, 882 (2d Cir.), cert. denied, 350 U.S. 845, 76 S.Ct. 87, 100 L.Ed. 753 (1955); Fed.R.Crim.P. 52 (a). The defendant asserts that he at one time suspected Saul Scott of having been responsible for his arrest on these narcotics charges, but that, upon learning from the bill of particulars that Scott was not implicated in the alleged narcotics transactions, his attorney never followed up his investigation, already commenced, of certain occurrences between Scott and the defendant. By sacrificing this opportunity to investigate the relationship between Scott and the defendant—which is asserted to have been that of association in gambling ventures but not narcotics—defendant claims that he was unfairly surprised at trial and that his otherwise adequate trial preparation was rendered inade-

quate by Robinson's trial testimony concerning Scott.

■■ The fact remains that defendant was clearly apprised by the bill of particulars of the exact place, date, and hour of each violation, as well as the fact that transactions with agent Robinson were to be the foundation of the charges brought to trial. All of this information should have been sufficient to enable defendant's counsel to prepare an adequate case in defense. We can not find, therefore, that defendant has made a sufficient showing of actual and substantial prejudice resulting from unfair surprise. See Williams v. United States, 289 F.2d 598, 601 (9th Cir., 1961). Even if counsel was inconvenienced by the withholding of Scott's name from the bill of particulars, it must be noted that Scott's identity was known to the defendant and his implication in alleged narcotics transactions was brought out in the first minutes of the trial. It is true that almost immediately, defendant's counsel requested that agent Robinson's testimony be stricken. But it is also true that any unfair surprise could have been remedied by a motion for a continuance, which would have enabled defendant to ascertain the whereabouts of Scott either by inquiry of the Government or by knowledge which the defendant possessed, and afforded him an opportunity to continue his investigation of the transactions mentioned in the bill of particulars. A request for an adjournment was particularly appropriate here, as no jury was present and the request could have been granted with a minimum of inconvenience. The defendant instead sought what was, in effect, an acquittal, which would have resulted from a granting of his motion to strike Robinson's testimony. This severe remedy was not called for under the circumstances, where more moderate relief, such as an adjournment, would have repaired any injury to the defendant, if indeed there was any.

The disclosure and knowledge of the identity of the special employee distinguish this case from Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957), where a conviction was reversed because the Government refused at trial to disclose the identity of an informant to whom the defendant was alleged to have sold narcotics. It is one thing to require the defendant to struggle throughout the entire course of a trial without any idea of the identity of his accuser, a principal in the unlawful transaction charged in the indictment. It is another to require the defendant to request a continuance, or seek some other comparable means to overcome what is asserted to be surprise, an assertion subject to considerable question here, for the informer Scott was already known to him and his identity confirmed in the incipient stages of the trial. The parallel to the recent case of Sartain v. United States, 303 F.2d 859, 861 (9th Cir., 1962), cannot be overlooked.

" * * * the element of withheld identity is absent here. At the very outset of the instant trial Sartain learned Wallace's identity from the first government witness * * * In Roviaro the Court stressed the appellant's need for access to the *testimony* of the informant * * *. Here, access to such testimony was available within minutes after the government's first witness took the stand. If surprise existed, a motion for a continuance was available. Such a motion was not made."

See United States v. Romano, 278 F.2d 202, 205 (2d Cir., 1960). Any plausible hardship was further mitigated by the fact that the defendant had been acquainted with Scott for seven years prior to trial and had met with him but three weeks to a month before; this strongly suggests that the defendant had ready access to Scott during the trial and could have secured information through him and most likely have called him as a witness in his behalf. See *United States v. Gernie*, 252 F.2d 664, 668–669 (2d Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958). As the trial progressed, Glaze took the stand and testified to the purported gambling relationship between Scott and himself. There was thus no void of proof on this issue.

The trial judge chose to disbelieve it. This disbelief was reinforced by substantial and credible proof of the defendant's guilt, the sufficiency of which is not challenged on appeal.

In short, we conclude that any possible prejudice to the defendant resulting from the Government's insufficient particulars was neither so substantial nor so irremediable as to warrant our finding reversible error in the trial judge's denying the motion to strike.

Despite the fact that the harm to the defendant was not sufficient to warrant reversal, we feel that the source of any harm and the manner in which it was "inflicted" by the Government merits some mention. The Government's response to the defendant's motion for the bill of particulars and to Judge Levet's order was more in the spirit of a ride to hounds than a fair-minded pursuit of the truth. It is proper that we state that the affirmance in this case resulted from the Government's failure to be advantaged by its questionable conduct. We can find little reason why the Government objected before Judge Levet to disclosing to the defendant the precise nature of the crime for which he was being tried. The Government would not have been unduly hampered in its proof had it been obliged to make clear before trial the general character of the transaction deemed to violate the narcotics laws— receipt, or concealment, or sale, or facilitation. This is especially so in a case where, as here, there is no indication from the proof adduced at trial that the crime charged was anything other than a sale.

We have observed that the Government, on occasion, objects to granting particulars even though no disadvantage to it can be ascertained. In so doing, it follows a policy which has gradually fallen into disfavor in our courts of criminal justice—that it should reveal but the bare minimum of the elements of the offense charged so as to satisfy in the most cursory manner the requirement that the defendant be apprised of enough information to aid him in the preparation of his defense. We do not say that the Government need give away every aspect of its case, nor that it reveal its evidence. But we do say that a balance fair to both sides can be struck, by a conscientious endeavor to avoid surprise at trial. This in turn makes for a more expeditious trial. Although the Government's conduct did not result in substantial prejudice to the defendant in this case, we by no means wish to imply that affirmance constitutes condonation.