41 F.3d 1504
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William HAZEL, a/k/a Beanie, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maurice GREGORY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory MASON, a/k/a Jeep, a/k/a "G", Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Jourdon EVANS, a/k/a "Freak", a/k/a "Man-Man",
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward J. ROBINSON, a/k/a Jason, Defendant-Appellant.
 Nos. 93-5634, 93-5637, 93-5635, 93-5638, 93-5636.
 United States Court of Appeals, Fourth Circuit.
 Argued: Sept. 29, 1994.
Decided: Nov. 15, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert E. Payne, District Judge. (CR-92-163-N)
 ARGUED: Henry Chao-lon Su, WILLIAMS, MULLIN, CHRISTIAN & DOBBINS, Richmond, VA, for appellant Hazel; Peter Mark Abramson, Norfolk, VA, for appellant Gregory; Robert Bryan Rigney, Norfolk, VA, for appellant Mason; David Wayne Bouchard, Chesapeake, VA, for appellant Robinson; Sa'ad El-Amin, Richmond, VA, for appellant Evans. Laura Marie Everhart, Asst. U.S. Atty., Norfolk, VA, for appellee. ON BRIEF: Helen F. Fahey, U.S. Atty., Norfolk, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 William Hazel, Maurice Gregory, Gregory Mason, Ronald Evans, and Edward Robinson appeal their convictions by jury verdict on charges of possession, distribution, and conspiracy to distribute heroin and cocaine. Each challenges a number of pre-trial, trial, and sentencing rulings. Finding no reversible error, we affirm.
 
 I.
 
 2
 Testimony at trial established the existence of a conspiracy in the Eastern District of Virginia to distribute heroin, cocaine, and cocaine base. Stacey Robinson, a brother of appellant Edward ("Jason") Robinson, originally organized the conspiracy in the summer of 1988 along with three others. Earl Williams, a New York-based dealer, acted as Stacey Robinson's primary heroin source throughout most of the conspiracy's duration. The several appellants joined the organization at various times, with Mason being the last to join in June 1991. Following a police search on September 19, 1991 of an apartment at which the group stored and converted cocaine, the appellants were arrested and in late September, 1991 were indicted in a fifty-count indictment that charged conspiracy and various substantive counts of distribution of heroin, cocaine, and cocaine base in violation of 21 U.S.C. Secs. 846, 841 and 18 U.S.C. Sec. 1952.
 
 
 3
 In January 1992, Mason entered into an immunity agreement with the Government. Despite the agreement, he was not dropped from the indictment. When he filed a motion to dismiss the indictment as to him, his motion was denied after the court found that Mason had breached the agreement.
 
 
 4
 Prior to trial, the appellants filed a motion for a bill of particulars, which the court denied.
 
 
 5
 During the ensuing jury trial, the appellants moved for a mistrial after a prosecution witness stated that he was reluctant to testify against the appellants because his life had been threatened. The court denied this motion, but did instruct the jury to disregard the testimony in question.
 
 
 6
 At the close of all the evidence, the appellants requested the court to instruct the jury about the Government's burden to prove the single conspiracy alleged in the indictment rather than multiple conspiracies. The court refused to give the requested instructions.
 
 
 7
 Each appellant was convicted of the conspiracy count in addition to numerous substantive counts.
 
 
 8
 Prior to sentencing, appellant Gregory filed a motion for disclosure by the prosecutors of exculpatory evidence concerning the alleged criminal activities of two government witnesses. The Government responded that it was able to determine only that no charges had been filed against the witnesses, and the district court denied the motion.
 
 
 9
 At the sentencing hearing, the appellants objected to the district court's findings as to the amounts of drugs variously attributable to them, their assigned roles in the offense, and their entitlements to downward adjustments of their respective offense levels.
 
 
 10
 This appeal followed.
 
 II.
 
 11
 The appellants jointly contend that the district court erred by refusing to instruct the jury that the Government had the burden of proving the single conspiracy alleged in the indictment rather than a number of multiple conspiracies. There is no merit to this contention.
 
 
 12
 A single conspiracy exists when there is "one overall agreement" or "one general business venture." United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988) (citations omitted). Whether the evidence at trial established a single conspiracy or multiple conspiracies is normally an issue for jury determination, United States v. Lozano, 839 F.2d 1020, 1023 (4th Cir.1988), dependent on the overlap of geographic area, key actors, methods, and goals, United States v. Crockett, 813 F.2d 1310, 1317 (4th Cir.), cert. denied, 484 U.S. 834 (1987). Defendants are not, however, automatically entitled to an instruction about multiple conspiracies. "If the facts support only a single conspiracy, the jury need not be instructed about multiple conspiracies." Id. at 1316 (citations omitted).
 
 
 13
 Under these principles, the district court did not err in refusing to instruct on multiple conspiracies. Although the appellants argue that Maurice Gregory operated an organization wholly separate from that of Stacey Robinson, the evidence belies such a claim. There was only one set of actors in the conspiratorial activities identified in the evidence. Robinson and Gregory had the same group of couriers at their disposal. They operated in the same geographic area, pushing the same products with the same goal.
 
 
 14
 That some of the actors in the conspiracy did not know each other does not change this conclusion. Members of a single conspiracy need only be aware of the larger conspiracy. See United States v. Richards, 737 F.2d 1307, 1309 (4th Cir.1984), cert. denied, 469 U.S. 1106 (1985). In addition, "a defendant need not be involved in every phase of [a] conspiracy to be deemed a participant." Leavis, 853 F.2d at 218. Because the facts supported only the existence of a single conspiracy, the district court did not err in refusing the appellants' requested instruction.
 
 III.
 
 15
 The appellants next jointly contend that the district court erred by refusing to declare a mistrial after a prosecution witness intimated that he had been threatened by one of the appellants or by someone with whom they were connected. We disagree.
 
 
 16
 We review this ruling under an abuse of discretion standard. United States v. Thompson, 744 F.2d 1065, 1068 (4th Cir.1984). While cross-examining a prosecution witness, George Pender, defense counsel attempted to establish that Pender was testifying in exchange for the Government's promise to act leniently when pursuing Pender's own criminal activities. During the Government's redirect examination, Pender stated that he was reluctant to testify against the appellants because he feared for his life. The jury was excused and no explanation for the statement was given in the jury's presence. Instead, the court instructed the jury to disregard the statement. In addition, the court informed the jury that it had "explored the statement with Mr. Pender and [was] satisfied [that] whatever may have motivated Mr. Pender's alleged fear [had] nothing whatsoever to do with any of these defendants." J.A. 1505.
 
 
 17
 We think this was the type of uncontrived occurrence whose possible prejudice may properly be avoided by a curative instruction, and that the instruction here was adequate to do so. Accordingly, the court did not abuse its discretion in declining to order a mistrial.
 
 IV.
 
 18
 Maurice Gregory next contends that the court erred in considering his two prior convictions--one for a substantive offense and the other for conspiracy--as two separate convictions for the purpose of enhancing his sentence under 21 U.S.C. Sec. 841(b).[1] We disagree.
 
 
 19
 In a single trial, Gregory, with others, had been convicted of one count of conspiracy to distribute heroin between May 1, 1968 and January 8, 1971 and one count of distributing heroin on January 8, 1971. Gregory argues that because these convictions arose from a "single criminal episode," they cannot be treated as separate for purposes of sentence enhancement under 21 U.S.C. Sec. 841(b).[2] We reject this argument and join the Tenth Circuit in holding that for this purpose "[c]onspiracy is a crime separate from the substantive violation." United States v. Pace, 981 F.2d 1123, 1132 (10th Cir.1992) (citations omitted), cert. denied, 113 S.Ct. 1401 (1993).
 
 V.
 
 20
 We next address the appellants' argument that the district court erred by denying their motion for a bill of particulars. "Granting or denying a motion for a bill of particulars is a matter within the sound discretion of the trial court, and, in the absence of an abuse of discretion which results in prejudice to the rights of the accused, the action of the court will not be disturbed." United States v. Dulin, 410 F.2d 363, 364 (4th Cir.1969) (citations omitted). As the Government points out, the appellants cannot establish that they were prejudiced by the court's denial. Even assuming the indictment did not provide the defendants with all of the information needed to prepare adequately, the materials voluntarily provided by the Government served to apprise the defendants of the needed information. See United States v. Glecier, 923 F.2d 496, 502 (7th Cir.1991).
 
 VI.
 
 21
 Each of the appellants next contends that the district court erred in determining his base offense level by miscalculating the quantity of drugs that properly could be attributed to him under USSG Sec. 2D1.1. Two principles govern this court's review of this issue. First, the Government must prove the quantity of drugs attributable to a defendant by a preponderance of the evidence. United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989), cert. denied, 493 U.S. 1084 (1990) (citing McMillan v. Pennsylvania, 477 U.S. 79 (1986)). Second, we must accept the sentencing court's findings of fact regarding the attributable quantity of drugs unless they are clearly erroneous. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989) (citing 18 U.S.C. Sec. 3742(e)).
 
 
 22
 At the outset, we consider appellant Hazel's contention that the district court erred in its finding of the total amount of drugs attributable to the conspiracy itself. The specific contention is that the court erred in finding that the heroin distributed by the conspiracy was "cut" five times, thereby over-inflating the total amount attributable. We disagree. At least one witness, Evans Williams, testified that as a matter of regular drug trafficking practice, heroin is cut five, six, or even as many as ten times for ultimate distribution. In addition, a financial analysis based on the amount of profit realized from each ounce of heroin demonstrated that a cut factor of five was appropriate. The court's finding of the total amount attributable to the conspiracy based upon a factual premise that the heroin was cut five times cannot be declared clearly erroneous.
 
 
 23
 Neither can the district court's findings regarding the amount of narcotics attributable to each appellant be declared clearly erroneous. In adherence to United States v. Irvin, 2 F.3d 72, 78 (4th Cir.1993), cert. denied, 114 S.Ct. 1086 (1994), the district court made individualized determinations of the "quantity of narcotics reasonably foreseeable to each coconspirator within the scope of his agreement." We address each in turn.
 
 
 24
 First, Jason Robinson maintains that the district court applied the incorrect "legal standard" in determining his base offense level. In reality, Jason disputes the court's factual finding that he reasonably could have foreseen the total amount of the conspiracy's drug activity during the span of time in which he was involved with the conspiracy. Robinson served many functions in the drug operation, however, including packager, distributor, resupplier, and courier. Given the scope of his participation, the court's attribution to him of the total amount attributed to the conspiracy cannot be considered clearly erroneous.
 
 
 25
 Next, William Hazel contends that because he distributed uncut heroin to the conspiracy, the court erred in attributing to him the entire amount of cut heroin thereafter distributed by the conspiracy. Similarly, Maurice Gregory argues that because he dealt only with uncut heroin, there should not have been attributed to him the entire amount of cut heroin. The Sentencing Guidelines provide that "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission ... [or] preparation" of that offense constitute relevant conduct. USSG Sec. 1B1.3(a)(1). Because it was not clearly erroneous for the court to find that both Hazel and Gregory reasonably could have foreseen that the cutting material would be added to the uncut heroin, the court did not err in making this attribution.
 
 
 26
 Ronald Evans makes the somewhat related argument that the court erred in applying a cut factor to "each an [sic] every ounce of heroin, powder cocaine, and crack" which was attributed to him. Contrary to his assertion, a cut factor was not used in the process of attributing to Evans the distribution of 13.73 kilograms of cocaine and crack cocaine. See J.A. 2104-05. As earlier held, the district court did not err in applying a cut factor of five to the heroin.
 
 
 27
 Finally, Mason contends that the court erred in attributing to him 5.7 kilograms of cocaine. Stanford Vann, Stacey Robinson's principal lieutenant, testified that Mason was converting a kilogram of powder cocaine into crack cocaine "like once a week, once every other week." Because Mason properly was found to have served the conspiracy by acting as its convertor of powder cocaine for a total of twenty-four weeks, the court's attribution of 5.7 kilograms of cocaine to him, cannot be declared clearly erroneous.
 
 VII.
 
 28
 Appellants Maurice Gregory, Ronald Evans, and Gregory Mason next contend that a number of the district court's findings regarding their respective roles in the offense under USSG Sec. 3B1 are clearly erroneous. The determination of an individual's role in the offense is a factual finding subject to the clearly erroneous standard of review. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989) (citing 18 U.S.C. Sec. 3742(e)).
 
 
 29
 We first address Gregory's argument that the court erred by enhancing his offense level by four points for his position as an "organizer or leader" under USSG Sec. 3B1.1(a).[3] Contrary to his assertions, the Government did present sufficient evidence that Gregory acted as a leader. Several witnesses testified that Gregory had various couriers working under him. According to their testimony, Gregory even had the authority, which he sometimes exercised, to send these couriers to New York to deliver money or obtain large quantities of heroin. Furthermore, there was testimony that Gregory had a high-level assistant, called a "lieutenant" on the streets, who worked under him in performing Gregory's function in the conspiracy.
 
 
 30
 Appellant Evans next contends that the court erred by increasing his base offense level by three under USSG Sec. 3B1.1(b)[4] because he acted as a "manager or supervisor." Evans argues that such a result was not warranted because he did not exercise control over others in the operation. We disagree. "[S]upervision of people is not necessary to be[ing] a manager under Sec. 3B1.1(b)." United States v. Chambers, 985 F.2d 1263, 1265 (4th Cir.1993). A role as "manager" properly may be found from the sheer extensiveness and importance of the activities of a defendant in the overall conduct of a conspiracy. According to the evidence, Evans packaged heroin, distributed drugs, collected money from street dealers, resupplied dealers, retrieved heroin from various locations where it was stored, wired money to Williams in New York, and made various trips to New York to deliver money to Williams. The district court's determination that in view of these activities he was a "manager" of the criminal conspiracy cannot be declared clearly erroneous.
 
 
 31
 Appellant Mason next asserts that the court erred by not granting him, under USSG Sec. 3B1.2,[5] a two-point decrease in his offense level as a minor participant in the drug conspiracy. The district court did not err in declining to make the requisite findings. As we have held, the mere fact that some members of a conspiracy may be found to deserve upward adjustments of their offense levels because of managerial or supervisory roles does not automatically dictate that the others must be found less culpable. United States v. Daughtrey, 874 F.2d 213, 216-17 (4th Cir.1989). The evidence sufficed to show that Stacey Robinson performed the important function of converting powder cocaine into crack cocaine. Before Mason joined the conspiracy, the group had to purchase already-prepared crack cocaine from other dealers. Mason's role, therefore, enabled the conspiracy to increase its profits. The district court was entitled to take the importance of this function into account in its determination that he should not be found a minor participant in the conspiracy.
 
 VIII.
 
 32
 Two of the appellants, Jason Robinson and Gregory Mason next contend that the evidence presented at trial was not sufficient to support their convictions. Their arguments have no merit. The evidence as to each easily sufficed to support the findings of guilt under the Jackson v. Virginia standard which asks simply "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979).
 
 
 33
 Various witnesses testified that Robinson acted as a lookout, packaged and sold drugs, resupplied drug dealers, and travelled to New York on conspiracy business. Stacey Robinson's chief "lieutenant," Stanford Vann, testified that Mason was converting a kilogram of cocaine into crack cocaine "like once a week, once every other week." Though there were inconsistencies in Vann's testimony, they dealt only with the amount of cocaine Mason was converting, and not with whether Mason was in fact converting cocaine. In addition, at least five other witnesses corroborated the testimony of Vann that Mason converted cocaine for the conspiracy.
 
 IX.
 
 34
 Jason Robinson next contends that the court erred by increasing his base offense level by two, pursuant to USSG Sec. 2D1.1(b),[6] for possession of a firearm during commission of the offense of conviction. Because the determination that an upward adjustment for this "characteristic" is warranted is essentially factual in nature, the clearly erroneous standard is applicable. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 
 35
 Under the Guidelines, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1, at 87 (Nov.1993) (emphasis added). Two witnesses testified that Robinson either habitually or at least occasionally was armed during his work for the conspiracy. In addition, Robinson was present during the September 9, 1991 search of the apartment at which he lived when three firearms--two in plain view--were found. A sufficient nexus between a firearm and a conspiracy may be found under USSG Sec. 2D1.1 when "the weapon is discovered in a place where the conspiracy was carried out or furthered." United States v. Apple, 962 F.2d 335, 338 (4th Cir.1992). Here, paraphernalia for cooking cocaine was found in the apartment and several witnesses testified that cocaine was stored there. This evidence easily sufficed to support a finding that the firearms found in the apartment were Robinson's and were connected with the conspiracy of which he was convicted. The district court did not, therefore, err by increasing Robinson's offense level by two for possession of a firearm pursuant to USSG Sec. 2D1.1(b).
 
 X.
 
 36
 Gregory Mason next contends that the court erred in ruling that he breached his immunity agreement with the Government so as to abrogate it. He challenges it on two grounds: that the finding of breach was clearly erroneous; alternatively, that if he did breach, the agreement was so vague that the Government's remedy should have been limited to prosecution for post-agreement conduct, or perjury or obstruction of justice, rather than complete abrogation of the immunity agreement.
 
 
 37
 As to whether a breach in fact occurred, there was simply a conflict of testimony between Mason and the federal officers as to whether Mason fulfilled the cooperation obligations he assumed under the agreement. The district court resolved it as a credibility issue, crediting the officers' version and rejecting Mason's. The court's finding of breach on this basis was not clearly erroneous.
 
 
 38
 As to whether the immunity agreement was so vague as to limit the Government's remedies upon his breach, the record simply belies Mason's contention of vagueness. Contrary to Mason's assertions, the agreement was explicit as to what would occur in the event Mason breached it. It stated in pertinent part:
 
 
 39
 Should you commit any crime(s) or should it be judged that you have given false, incomplete or misleading testimony or information, or otherwise violated any provision of this agreement, you shall thereafter be subject to prosecution for any federal criminal violations of which this office has knowledge and including, but not limited to perjury and/or obstruction of justice.
 
 
 40
 J.A. at 9-10 (emphasis added). Therefore, the district court did not err in treating the immunity agreement as completely abrogated by Mason's found breach.
 
 XI.
 
 41
 Finally, the appellants maintain that the district court should have required the Government to investigate the alleged criminal activities of two government witnesses, Earl Williams and his wife Monique. Prior to his sentencing, Gregory suspected that both Earl and Monique Williams were being investigated, following their testimony at his trial, for distributing narcotics in Lewisburg Penitentiary, where Earl Williams was incarcerated. Gregory filed a motion for disclosure by the prosecution of exculpatory evidence related to these investigations. The Government responded to the motion by stating that it had uncovered "third-hand information" that an investigation was being conducted into whether Monique Williams was smuggling heroin into the Lewisburg Penitentiary, presumably to her husband. At that time the Government knew "of absolutely no pending charges" and "no convictions." J.A. 1798. According to the appellants, the court should have ordered the Government to investigate further the nature of the Williams' criminal activities.
 
 
 42
 Under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny "the prosecution has a duty to disclose material exculpatory evidence and ... reversible error has occurred if the prosecution has failed to disclose such 'material ' evidence." Carey v. Duckworth, 738 F.2d 875, 877 (7th Cir.1984) (citing Brady; United States v. Agurs, 427 U.S. 97 (1976)) (emphasis added). "It is well accepted that a prosecutor's lack of knowledge does not render information unknown for Brady purposes." United States v. Perdomo, 929 F.2d 967, 970 (3rd Cir.1991).
 
 
 43
 The information sought in the instant case was immaterial, however. Neither Earl nor Monique Williams testified at the sentencing hearing and each freely admitted their involvement in the heroin distribution business at trial. At the sentencing hearing, the district court stated that the existence of charges would not have affected his estimation of the witnesses' veracity. Therefore, the district court acted appropriately in declining to require the prosecution to conduct further investigations. See Carey, 738 F.2d at 877 (denying reversal because of immaterial nature of evidence sought).
 
 XII.
 
 44
 For all the foregoing reasons, we affirm the appellants' respective convictions.
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 Under Sec. 841(b), a convicted defendant with only one prior conviction for a felony drug offense "shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment." 21 U.S.C. Sec. 841(b)(1)(A)(iii). A convicted defendant with two or more such convictions "shall be sentenced to a mandatory term of life imprisonment without release." Id
 
 
 [2]
 Gregory also maintains that the government failed to provide the district court with proper evidence of his prior convictions. Because Gregory failed to file a written response to the evidence of the prior conviction as required by the relevant statute, he is prevented from challenging the validity of his prior convictions on appeal. See 21 U.S.C. Sec. 851(c)(1)
 
 
 [3]
 This provision states in relevant part:
 Based on the defendant's role in the offense, increase the offense level as follows:
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 USSG Sec. 3B1.1(a).
 
 
 [4]
 This provisions states that:
 Based on the defendant's role in the offense, increase the offense level as follows:
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 USSG Sec. 3B1.1(b).
 
 
 [5]
 This provision states that:
 Based on the defendant's role in the offense, decrease the offense level as follows:
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 USSG Sec. 3B1.2(b).
 
 
 [6]
 This provision states in pertinent part:
 (b) Specific Offense Characteristics
 (1) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.
 USSG Sec. 2D1.1(b)(1).